No. 03-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 369

IN RE THE MATTER OF

J.C., Jr., and R.B.,

   Youths in Need of Care.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
               In and for the County of Custer, Cause No. DN-02-1,
               The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Cynthia K. Thornton, Attorney at Law, Miles City, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Tammy K. Plubell and Garry P.
        Bunke, Assistant Attorneys General, Helena, Montana (State)

        Janette K. Jones, Krutzfeldt & Jones, Miles City, Montana (Guardian ad
        litem)

        S. Kim Taylor, Lucas & Tonn, Miles City, Montana (Father of R.B.)

        John Houtz, Attorney at Law, Forsyth, Montana (Father of J.C., Jr.)

                Submitted on Briefs:  November 20, 2003

                        Decided:  December 24, 2003

Filed:


        _____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 K.P. is the natural mother of R.B. and J.C. The Department of Public Health and Human Services (DPHHS) filed a petition for termination of K.P.'s parental rights to R.B. and J.C. in the Sixteenth Judicial District Court, Custer County. The District Court granted the petition, and K.P. appeals. We affirm the judgment of the District Court.

¶2 We restate the sole issue on appeal as follows:

¶3 Did the District Court abuse its discretion when it terminated K.P.'s parental rights to R.B. and J.C.?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On January 10, 2002, K.P. left two-year-old R.B. and two-month-old J.C. alone in their home in Miles City, Montana, for over one hour. As a result, DPHHS filed a petition for emergency protective services and temporary legal custody of R.B. and J.C. on January 15, 2002. The District Court conducted a hearing on the petition on March 22, 2002. At the hearing, the parties stipulated to the fact that the children were youths in need of care, and agreed that the District Court could award temporary legal custody of the children to DPHHS. The parties also submitted a treatment plan for K.P. The District Court reviewed and approved the treatment plan that same day.

¶5 On March 28, 2002, the District Court adjudicated the children youths in need of care, as defined in § 41-3-102, MCA (2001), and granted temporary legal custody of the children to DPHHS. On September 12, 2002, DPHHS filed a petition requesting that the District Court terminate K.P.'s parental rights to R.B. and J.C. As grounds for the termination,

2

DPHHS asserted that K.P. failed to complete the treatment plan approved by the District Court. On October 25, 2002, Amber Trenka, the guardian ad litem for the instant case, filed a report recommending that K.P.'s parental rights to the children be terminated. Among other things, Trenka's report indicated that K.P. had not successfully completed the treatment plan approved by the District Court.

¶6 The District Court conducted a hearing on the petition on January 14, 2003. On January 28, 2003, the District Court issued findings of fact and conclusions of law, terminating K.P.'s parental rights to R.B. and J.C. K.P. appealed on February 6, 2003.

## STANDARD OF REVIEW

¶7 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. *In re M.T.*, 2002 MT 174, ¶ 21, 310 Mont. 506, ¶ 21, 51 P.3d 1141, ¶ 21. We review a district court's specific findings to determine if they are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that a mistake has been made. *In re M.T.*, ¶ 21. Additionally, we will presume that a district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re M.T.*, ¶ 22.

## DISCUSSION

¶8 Did the District Court abuse its discretion when it terminated K. P.'s parental rights to R.B. and J.C.?

3

¶9 There are several circumstances under which a district court may order the termination of the parent-child legal relationship. See § 41-3-609, MCA (2001). Once such circumstance is in situations where the child is an adjudicated youth in need of care and both of the following exist: (1) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA (2001).

¶10 In the instant case, K.P. concedes that R.B. and J.C. were adjudicated by the District Court as youths in need of care. K.P. further concedes that she failed to successfully complete all portions of the treatment plan approved by the District Court. However, K.P. maintains that the District Court improperly terminated her parental rights because the evidence is insufficient to find that the conduct or condition rendering her unfit was unlikely to change within a reasonable time.

¶11 In order to determine whether the conduct or condition rendering a parent unfit is likely to change within a reasonable time, the District Court is required to assess the past and present conduct of the parent. *In re M.T.*, ¶ 34. We do not have a crystal ball to look into to make this determination, so it must, to some extent, be based on a person's past conduct. *In re A.S.*, 2002 MT 265, ¶ 23, 312 Mont. 277, ¶ 23, 59 P.3d 382, ¶ 23.

¶12 In this case, DPHHS began providing services to K.P. in June of 2001. Some of these services included: public assistance, food stamps, Medicaid, low income housing, WIC, mental health services, family based services, and in-home services from the Developmental

4

Education Assistance Program.  Despite her utilization of such services, K.P. was unable to consistently meet her children's basic needs.  Moreover, on January 10, 2002, K.P. left two-year-old R.B. and two-month-old J.C. alone at home for over an hour.

¶13     In the months following the removal of the children, K.P. failed to successfully complete the treatment plan approved by the District Court.  Most notably, K.P. was unable to maintain employment, secure a permanent residence, attend counseling sessions, and attend all of her scheduled visits with the children.  K.P. also tested positive for THC, the active ingredient in marijuana, on September 9, 2002, despite the fact that she was pregnant (with her third child) at the time.  As a result of K.P.'s failure to comply with the treatment plan, DPHHS requested that the District Court terminate her parental rights to R.B. and J.C. on September 12, 2002.

¶14     On October 9, 2002, K.P. moved from Miles City to Hopkins, Minnesota.  While in Hopkins, K.P. resided with her mother and stepfather.  On November 15, 2002, K.P. obtained employment at a K-mart store.  However, she discontinued such employment in December of 2002, when her pregnancy forced her to be placed on bed rest.  She remained unemployed and on bed rest when she appeared at the hearing on January 14, 2003.

¶15     K.P. asserts that because she had obtained employment and was living in a stable environment at the time of the hearing, the District Court erred in finding that the conduct or condition rendering her unfit was unlikely to change within a reasonable time.  Indeed, the District Court stated at the hearing that: "I believe that [K.P.] has made a lot of good progress in the last couple of months, and I think that's largely because her mother is giving

5

her the support that she needs." However, the District Court also made the following observations to K.P.:

> [Y]ou simply haven't taken advantage of things that were available to you. And it's not because you are not able to do so. You have the ability to do the things that you need to do. You just haven't done them. You have not complied with the service treatment plan. . . . you did a few things here and there, and that's just not enough. **You made these strides with your mother, but your history is not that you will follow through with these strides and these steps that you have positively taken.** [Emphasis added.]

¶16 This Court has previously concluded that evidence of rehabilitation on the part of the parent is germane to the issue of that parent's ability to care for his or her child in the future. *In re A.S.*, ¶ 23. We have also concluded however, that evidence of rehabilitation does not render a district court powerless to find future danger to the child, it is simply evidence to be considered by the district court, and is subject to the same standard of review as any other evidence. *In re A.S.*, ¶ 23.

¶17 Here, the District Court compared K.P.'s partial attempts to comply with the treatment plan in the three months preceding the hearing to her history of non-compliance over the course of seventeen months. The District Court then determined that, taken as a whole, it was unlikely that K.P. would become a fit parent within a reasonable time. After a careful review of the record, we conclude that the District Court did not err in making this determination. See generally *In re J.W.*, 2001 MT 86, ¶¶ 23-25, 305 Mont. 149, ¶¶ 23-25, 23 P.3d 916, ¶¶ 23-25. K.P. was not able to complete her treatment plan, nor does the record demonstrate that the District Court erred in finding that the conduct which rendered her unfit

6

was unlikely to change within a reasonable time. Accordingly, the statutory criteria listed in § 41-3-609(1)(f), MCA (2001), have been satisfied.

¶18     Because the statutory criteria listed in § 41-3-609(1)(f), MCA (2001), were satisfied, the District Court did not abuse its discretion when it terminated K.P.'s parental rights to R.B. and J.C.

¶19     Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE